UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**PATRICIA L. ISENHART,**

      **Plaintiff,**

v.                                              **CIVIL ACTION 2:14-cv-16317**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Memorandum of Law (ECF No. 11), Brief in Support of Defendant's Decision (ECF NO. 12) and Plaintiff's Reply Memorandum of Law (ECF No. 13).

### Background

Patricia L. Isenhart, Claimant, filed applications for disability insurance benefits (DIB) and supplemental society income (SSI) under Title II and part A of Title XVIII of the Social Security Act on May 25, 2010 (Tr. at 255-259). Claimant alleged disability beginning on June 16, 2008, but amended the onset date to July 15, 2009 (Tr. at 67). The claims were denied initially on September 16, 2010 (Tr. at 177-185 and 186-192). Claimant filed a request for reconsideration for social security benefits on October 15, 2010 (Tr. at 193). The claims for reconsideration were denied on February 25, 2011 (Tr. at 194-204 and 205-207). Claimant filed a written request for hearing by Administrative Law Judge (ALJ) on March 2, 2011 (Tr. at 208-209). In her request for a hearing before an ALJ, Claimant stated that she disagreed with the determination made on her claim for SSI disability/Title II benefits because she was still absolutely disabled and that she was

submitting additional evidence (Tr. at 208-209). Claimant appeared in person and testified at a hearing held in Charleston, West Virginia on November 2, 2012 (Tr. at 62-109). In the decision dated December 19, 2012, the ALJ determined based on the application for a period of disability and disability insurance benefits, Claimant was not disabled under the Social Security Act. The ALJ also determined that based on the application for supplemental security income, Claimant was not disabled under the Social Security Act (Tr. at 18-46). On January 9, 2013, Claimant requested a review by the Appeals Council because she was still absolutely disabled (Tr. at 16). On March 12, 2014, the Appeals Council received additional evidence which was made part of the record (Tr. at 4). That evidence consisted of a letter from Howard D. Olinsky dated March 5, 2013, admitted as Exhibit 13E and medical records from WVU Hospitals and University Health Associates dated June 13, 2013, admitted as Exhibit 25F. On March 12, 2014, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). The Appeals Council stated that it considered the Claimant's disagreement with the decision, the additional evidence, including the medical evidence from WVU Hospitals and University Health Associates and whether the ALJ's action, findings, or conclusion was contrary to the weight of the evidence of record. The Appeals Council found that this information did not provide a basis for changing the ALJ's decision (Tr. at 1-3).

May 13, 2014, Claimant brought the present action requesting this Court to remand the case for a further a hearing.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she met the insured status requirements of the Social Security Act through September 30, 2011,

and that Claimant has not engaged in substantial gainful activity since the amended alleged onset date, July 15, 2009 (Tr. at 23). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, morbid obesity, chronic obstructive pulmonary disease, diabetes, deconditioning peripheral vascular disease and peripheral edema, depression, anxiety, panic attacks and borderline intellectual functioning. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 27). The ALJ then found that Claimant has a residual functional capacity to perform sedentary work[1] (Tr. at 40). The ALJ concluded that transferability of job skills was not an issue because Claimant's past relevant work was unskilled. (Id.) The ALJ found Claimant would be able to perform the requirements of representative occupations such as sorter, folder and bonder. On this basis, benefits were denied (Tr. at 41).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial

---

[1] The ALJ ordered that Claimant can lift 10 pounds occasionally and up to 10 pounds frequently, stand and walk 2 hours in an 8-hour day and sit for at least 6 hours in an 8-hour day. Walking is limited to 15 minutes at a time, standing is limited to 10 minutes at a time and sitting is limited to 10 minutes at a time (based on Claimant's testimony). She should never engage in the climbing of ladders, ropes or scaffolds. She can occasionally engage in the climbing of ramp and stairs, balancing, stooping, kneeling, crouching and crawling. This individual should avoid concentrated exposure to extreme heat; extreme cold; vibrations; fumes such as odors, dusts, gasses and poorly ventilated spaces. She is limited to performing simple, routine and repetitive work tasks. In addition, this individual should have only occasional interaction with coworkers and supervisors, and no interaction with the general public. This individual is limited to making only simple work related decision. Moreover, Claimant should not work in a job with fast-paced production, requirements and she should have a few, if any, changes in work routine (Tr. at 30-31).

evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

At the time of the hearing before the ALJ, Claimant was forty-seven years old (Tr. at 68). She completed eighth grade before dropping out of school and she did not get her GED (Tr. at 72). She has never had a driver's license (Tr. at 95). Claimant lives with her husband, her son, her son's girlfriend and three grandchildren (Tr. at 69).

### The Medical Record

Claimant asserted the following as medical records to support her position:

> A progress note dated January 2, 2009, from East Liverpool Community Health Center documented that the Plaintiff was prescribed Citalopram, Xanax, and Trazodone for diagnoses of depression and anxiety. T 358.
>
> On October 1, 2009, Plaintiff underwent an MRI of the lumbar spine, which revealed flattening of the posterior disc and mild ligamentum flava hypertrophy and mild facet degenerative changes at L3-L4; central disc protrusion and mild ligamentum flava hypertrophy causing effacement of the anterior thecal sac and mild narrowing of the central spinal canal, and hypertrophic degenerative changes of the facet joints at L4-L5; and mild diffuse disc protrusion with increased T2 signal in the posterior disc compatible with an annular tear, mild narrowing of the central spinal canal, and mild

5

bilateral facet degenerative changes at L5-S1.  T 377-78.

On April 7, 2010, Plaintiff underwent pulmonary function testing, which showed evidence of intermittent obstructive lung disease.  T 460.

On May 6, 2010, Plaintiff treated with Mark Peckman, D.O. who reviewed Plaintiff's MRI of the lumbar spine. Dr. Peckman diagnosed the Plaintiff with lumbar facet joint arthritis, disc protrusion of L4-L5 and L5-S1, and thecal sac effacement of L4-L5. T 371-72.

On June 9, 2010, Dr. Ghazanfar Ahmed[2] completed a mental capacity assessment and opined that Plaintiff had numerous moderate to extreme mental limitations.  T 383-85.  Dr. Ahmed noted that Plaintiff did not remember her doctor's appointments, and did not know that it was 2010, but rather believed that it was 2009. T 383.  Dr. Ahmed further noted that Plaintiff reported that she found it very difficult to wait in the waiting room and that Plaintiff was pacing and generally very agitated.  T 384.  Dr. Ahmed also completed a Residual Functional Capacity Questionnaire and indicated that he had treated Plaintiff every three-to-six months since June 19, 2007 for diagnoses including arthritis in the lower back, anxiety and depression.  T 386.  Dr. Ahmed opined that Plaintiff's prognosis was poor and indicated that her symptoms included "9/10 chronic low back pain" and severe anxiety and depression.  T 386.  Dr. Ahmed opined that these symptoms were constantly serious enough to interfere with the attention and concentration required to perform simple work-related tasks.  T 386. Dr. Ahmed opined that Plaintiff would need additional breaks during the workday in excess of the typical breaks; could walk 0 city blocks at one time; could sit and stand/walk for 15 minutes each at one time; could sit and stand/walk for 1 hour each in total during a workday; would need a job that permitted shifting positions at will from sitting, standing, or walking; would need to take unscheduled breaks every 15 minutes for 5-10 minutes at a time; and would miss work 3 to four times per month.  T 386-87. On July 12, 2010, Plaintiff treated at the East Liverpool Community Health Center, and was diagnosed with peripheral edema.  Plaintiff was prescribed Lasix.  T 490.

On July 28, 2010, Claudia E. Johnson Brown, Ph.D performed a psychological consultative examination of Plaintiff.  T 409-16.  Dr. Johnson Brown noted that Plaintiff's mood appeared markedly

---

[2] The record reflects that Ghazanfar Ahmed, M.D., was Claimant's family physician (Tr. at 581).

6

depressed and anxious, and her affect was flat and restricted. T 411. Plaintiff described her emotional status as "drained," and reported feeling sad "all the time" while experiencing crying spells several times per day. T 411. Dr. Johnson Brown noted that Plaintiff cried at times during the interview and reported that her symptoms of depression had worsened in the past several years. T 411.

Plaintiff reported sleeping only a few hours per night and experiencing nightmares relating to her son's fatal car accident. T 411. Plaintiff reported having difficulty completing her activities of personal care and needing her daughter's assistance with completing her personal care. T 411. She reported that she did not get along with other people and described herself as a "loner" who avoided other people. T 412. She reported that she worries "all the time" about "What am I going to have to eat, my kids, and my granddaughter." T 412. She reported experiencing panic attacks one to two times each week usually when she is away from home and traveling in a car. T 412. She stated that she experiences heart palpitations, sweating, and the need to get away and be by herself. T 412. She reported that crowds bother her because "they make me feel nervous." T 412. She reported that she stays home more than usual because she doesn't like to be around people. T 412. She reported that she "stays in my room" when she is angry. T 412. She stated that she becomes angry "three to four times each week." T 412. She stated that once she becomes angry that her anger passes quickly. T 412. She stated that she has thrown a chair out of a window when she was angry in the past. T 412.

She was able to identify Barack Obama as the current President of the United States, but was unable to recall the next most recent president. T 412. When asked to name any recent presidents she responded, "Clinton." T 412. She was unable to identify Pittsburgh as the closest major city to where she lives. T 412. Dr. Johnson Brown noted that Plaintiff's ability to concentrate was mildly impaired. T 413. She was able to complete one step of serial sevens before making an error. T 413. She was able to complete five steps of serial threes without making an error. T 413. She was able to add one and two digit numbers, but she was unable to divide. T 413. Dr. Johnson Brown noted that Plaintiff's immediate recall was mildly impaired. T 413. She was able to recall two out of three items after five minutes. T 413. Dr. Johnson Brown noted that Plaintiff's recent memory appeared moderately impaired. T 413. She was able to recall the details of the most recent meal she had eaten this morning but could not recall the details of any other recent meals. T 413. Dr. Johnson Brown noted that Plaintiff's remote memory appeared moderately impaired. T 413.

7

She was intact for personal information such as date and place of birth. T 413. She was able to state the town where she had grown up when she was small. T 413. She was unable to recall an address of where she had lived when she was small. She was unable to identify the elementary school that she attended. T 413. She was unable to recall any elementary school teachers by name or what grades they had taught. T 413. Dr. Johnson Brown noted that Plaintiff's insight into her personal condition was fair and her insight in general also appeared fair. T 413. She was unable to give an adequate interpretation of the proverb "Don't cry over spilt [sic] milk" by stating "I don't know." T 413. When asked to interpret the proverb, "Rome wasn't built in a day" she replied by stating, "I don't know." T 413. Dr. Johnson Brown noted that Plaintiff's judgment appeared poor. T 413. When asked what she would do if she would smell smoke in a theater, she responded, "Yell." T 413. When asked what she would do if she was stranded in the Denver airport with only one dollar in her pocket she responded by stating, "Panic." T 413. When asked what she would do if she were to find a letter in the street that was sealed, addressed and had a new stamp on it she responded by stating, "Put it in the mailbox." T 413.

Regarding her activities of daily living, Plaintiff reported that she "does nothing" during the day. T 414. She stated that she tries to do some household chores as she is able. T 414. She stated that she watches TV and sits outside on the porch when there are no neighbors around. T 414. She stated that she usually naps in the afternoon. T 414. She denied having regular meal times or a regular bedtime. T 414. She stated that her husband and daughter do the cooking and the cleaning. T 414. She stated that her husband does the shopping and the laundry. T 414. She stated that her husband takes care of the family's personal business. T 414. She stated that her daughter and husband have primary parenting responsibility for her granddaughter. T 414. She denied belonging to any groups or having any regular activities. T 414. She stated that she used to enjoy bowling, but she isn't able to do it any more. T 414. She stated that she no longer has any friends. T 414. She stated that she might spend one hour each day visiting with family. T 414.

Dr. Johnson Brown's summary and conclusions indicated that Plaintiff's mood appeared markedly depressed and anxious and her affect was flat and restricted. T 414. She appeared to be functioning in the Borderline Range of cognitive ability. T 414. Her ability to concentrate was mildly impaired. T 414. Her immediate recall was mildly impaired. T 414. Her recent memory appeared moderately impaired. T 414. Her remote memory appeared moderately

impaired. T 414. Her insight in general appeared fair. T 414. Her judgment appeared poor. T 414. She denied experiencing auditory and visual hallucinations. T 414. She stated that she experiences nightmares of her son's fatal car accident. T 414. She reported having difficulty with impulse control in the past. T 414. She denied any substance abuse problems. T 414.

Dr. Johnson Brown noted that the information gathered during the interview and the resulting opinions were thought to be an accurate reflection of Plaintiff's current condition and level of functioning. T 414. At that time, Dr. Johnson Brown diagnosed Plaintiff with major depressive disorder, recurrent, severe without psychotic features; panic disorder without agoraphobia; and borderline intellectual functioning. T 415. She noted that Plaintiff's remote memory was moderately impaired and that Plaintiff had a global assessment of functioning (GAF) score of 40, which indicated a major impairment in several areas. T 415. Dr. Johnson Brown then opined that Plaintiff was moderately impaired in her ability to understand, remember and follow instructions; moderately impaired in her ability to maintain attention and concentration to perform simple repetitive tasks; markedly impaired in her ability to relate to others, including fellow workers and supervisors; markedly impaired in her ability to withstand the stresses and pressures associated with day-to-day work activity; and that Plaintiff had moderate impairment in her ability to manage any benefits that she may receive in her own best interest. T 415.

On September 2, 2010, an Emergency Department Report from East Liverpool City Hospital indicated that Plaintiff was diagnosed with an acute cervical strain with left arm radiculopathy and cervical degenerative disc disease. T 438. She was prescribed Vicodin and Flexeril. T 438.

On August 15, 2011, Plaintiff underwent another MRI of the lumbar spine, which revealed mild facet arthrosis with mild left posterolateral disk protrusion on the left with borderline contact exiting left L2 nerve root at L2-L3; a minor annular bulge and mild facet arthrosis at L3-L4; a minor annular bulge and mild broad based central protrusion with mild to moderate bilateral lateral recess narrowing, borderline contact descending nerve roots at L4-L5; and a minor annular bulge with mild arthrosis as well as a mild broad based central protrusion with borderline contact descending nerve roots at L5-S1. T 577.

Progress notes dated August 9, 2012, from Westbrook Health Services, documented that Plaintiff had diagnoses of major depressive disorder, recurrent, severe, with psychotic features and

panic disorder without agoraphobia. T 751.

On October 23, 2012, the Plaintiff underwent additional pulmonary function testing, which indicated a reduction of her diffusing capacity, as well as her maximal voluntary ventilation. T 763. (ECF No. 11).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in evaluating the medical opinions, thereby failing to support her residual functional capacity by substantial evidence. Claimant also asserts that the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining her credibility. Lastly, Claimant asserts that the ALJ's determination that she is capable of performing jobs that exist in significant numbers within the national economy is not supported by substantial evidence (ECF No. 11).

In response, Defendant asserts that substantial evidence supports the Commissioner's Decision that Claimant did not have a disabling impairment and the ALJ's weight given to medical opinions (ECF No. 12). Defendant also asserts that the ALJ properly assessed Claimant's credibility and residual functional capacity (RFC).

### Credibility Determination

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§

404.1512(a) and 416.912.

In the present matter, Claimant asserts the following in support of her argument that the ALJ's credibility analysis is not supported by substantial evidence:

> First, the ALJ found that the record does not support the "quite limited daily activities" Plaintiff alleges. T 35-36. However, the ALJ failed to consider that Plaintiff reported that her everyday activities are impacted, inter alia, by her problems with concentration and focus. T 286. Plaintiff's assertion is supported by the findings of consultative examiner Dr. Brown who assessed Plaintiff's concentration and immediate recall to be mildly impaired and her recent and remote memory moderately impaired. T 414-15. Thus, findings of the record support Plaintiff's limited daily activities.
>
> Second, the ALJ erroneously discounted Plaintiff's alleged breathing difficulties based on treatment records which "have consistently indicated that [Plaintiff] has continually reported smoking cigarettes." T 33. However, a Plaintiff's failure to quit smoking is an improper basis on which to rest a credibility determination. *Coleman v. Astrue,* No. 1:09-659, 2010 U.S. Dist. LEXIS 97926, at *48 (D.S.C. Sept. 17, 2010) ("[C]igarettes are addictive and [a] Plaintiff's failure to cease smoking cigarettes may not substantially support an adverse credibility determination.")
>
> Third, the ALJ erroneously found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." T 32.
>
> It is improper for an ALJ to find a Plaintiff's statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding. *See Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012) (Posner, J.) ("[T]he passage implies that ability to work is determined first and is then used to determine the Plaintiff's credibility. That gets things backwards."). Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929 (ECF No. 11).

In response, Defendant asserts the following:

> [T]he ALJ properly found that although Plaintiff's alleged medically determinable impairments could reasonably be expected to cause

>her alleged symptoms, the evidence did not support the extreme limitations as alleged by Plaintiff (Tr. 32-36). Plaintiff asserts that the ALJ improperly assessed the credibility of her ability to perform activities of daily living because the ALJ did not consider Plaintiff's problems with concentration and focus (Pl.'s Br. at 13-14). As discussed in more detail above, the ALJ considered the mental health evidence that revealed generally normal findings and only mild limitations in concentration (Tr. 413). Based upon this evidence, the ALJ correctly found that Plaintiff's allegation of disabling concentration was unsupported.
>
>Next, Plaintiff asserts that the ALJ improperly discredited her breathing problems solely because she continued to smoke (Pl.'s Br. at 14). To the contrary, the ALJ considered more than the fact that Plaintiff continued to smoke two packs of cigarettes daily, despite her breathing problems (Tr. 411). The ALJ also considered the medical evidence that revealed findings of "very mild" lung disease, normal pulmonary function tests, and no more than conservative treatment after Plaintiff was released from inpatient care (Tr. 460). Based upon the objective evidence that shows minimal symptoms, the ALJ properly found Plaintiff not fully credible regarding her breathing problems. (ECF No. 12).

In the present matter, substantial evidence does not support the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The Fourth Circuit has held that the ALJ's failure to evaluate a claimant's credibility before analyzing the RFC is harmful error and requires remand. *Mascio v. Colvin*, 780 F.3d 632, 639-640 (4th Cir. 2015). The ALJ found that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment (Tr. at 32). This Court recommends the District Judge find that the ALJ did not conduct a proper credibility evaluation.

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are

entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c) and 416.929.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Defendant asserts that under the regulations, the ALJ cannot find a claimant disabled based solely on subjective complaints. 20 C.F.R. §§ 404.1528, 404.1529, 416.938, 416.929. Allegations of pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929. Defendant asserts that Claimant's subjective complaints are not enough to demonstrate her alleged symptoms. However, whether the ALJ's credibility determination was supported by objective evidence is not the issue at hand. The procedural sequence which an ALJ must follow in determining credibility of a claimant and in determining a claimant's RFC is the disputed issue in the present matter.

The regulations on assessing credibility state that "We will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons." 20 C.F.R. §§ 404.1529(c)(3) and 416.929.

When an ALJ evaluates a claimant's RFC, a medical assessment of the claimant's remaining capabilities to work, he considers all of the relevant medical and other evidence. See 20 C.F.R. § 404.1513; SSR 96-8p. In cases in which symptoms, such as pain, are alleged, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations. Additionally, the RFC assessment must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. Richard C. Ruskell, *Social Security Disability Claims Handbook* (2015 Edition), 214 n.5.

In the present case, the ALJ found that Claimant can lift 10 pounds occasionally and up to 10 pounds frequently, stand and walk 2 hours in an 8-hour day and sit for at least 6 hours in an 8-hour day. Walking is limited to 15 minutes at a time, standing is limited to 10 minutes at a time and sitting is limited to 10 minutes at a time (based on Claimant's testimony). She should never engage in the climbing of ladders, ropes or scaffolds. She can occasionally engage in the climbing of ramp and stairs, balancing, stooping, kneeling, crouching and crawling. This individual should avoid concentrated exposure to extreme heat; extreme cold; vibrations; fumes such as odors, dusts, gasses and poorly ventilated spaces. She is limited to performing simple, routine and repetitive work tasks. In addition, this individual should have only occasional interaction with coworkers and supervisors, and no interaction with the general public. This individual is limited to making only simple work related decision. Moreover, Claimant should not work in a job with fast-paced production requirements and she should have a few, if any, changes in work routine (Tr. at 30-31).

Following the RFC, the ALJ discussed symptoms alleged by Claimant (Tr. at 31). The ALJ's credibility discussion merely lists Claimant's asserted symptoms then provides the

14

following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment (Tr. at 32).

It was then after the boilerplate language that the ALJ summarized the medical evidence.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts… and nonmedical evidence." Courts have held that an ALJ failed to follow SSR 96-8p "by merely summarizing the medical evidence. The Ruling requires a narrative discussion of the RFC to show how the evidence supports the ALJ's conclusion." *Munday v. Astrue*, 535 F.Supp. 2d 1189, 129 Soc. Sec. Rep. Serv. 726 (D. Kan. 2007). The RFC assists the ALJ in determining whether the claimant retains enough vocational capacity to return to work. When calculating the RFC, the ALJ must take all factors into account and explain his conclusions with substantial evidence. *See Kotofski v. Astrue*, 157 Soc. Sec. Rep. Serv. 313, 2010 WL 3655541 (D. Md. 2010).

Furthermore, the ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge. . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and revolved. The Fourth Circuit agreed with the Seventh Circuit that the boilerplate language of "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment cited above" gets things backwards by implying "that ability to work is determined first and is then used to determine the claimant's credibility." *Mascio* citing *Bjornson v. Astrue*, 671 F.3d 640, at 645 (7th Cir. 2012). The court stated "The boilerplate [] conflicts with the agency's own regulations" because SSR 96-8p defines RFC as "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." The RFC must be based on all of the relevant evidence in the case record. The Regulations list evidence to be considered includes effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. *See* SSR 96-8p.

"The assessment of a claimant's ability to work will often depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the boilerplate language implies that ability to work is determined first and is then to be used to determine the claimant's credibility."[3] As the ALJ in the present matter made his RFC determination before he properly weighed the claimant's credibility, this Court recommends the

---

[3] Richard C. Ruskell, *Social Security Disability Claims Handbook* (2015 Edition), 217.

...

District Judge find that Defendant's credibility assessment is not supported by substantial evidence. Other issues raised by the parties shall be addressed on remand.

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Plaintiff's Memorandum of Law (ECF No. 11), **DENY** Defendant's Brief in Support of Defendant's Decision (ECF No. 12), **REVERSE** the final decision of the Commissioner, **REMAND** this case for further administrative proceedings this matter from the Court's docket and **DISMISS** this matter form the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   August 31, 2015

_____
Dwane L. Tinsley
United States Magistrate Judge